EXHIBIT A

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release is entered into by and between Francisco Corte, individually and on behalf of the class of individuals that he seeks to represent and Defendants Fig & Olive Founders, LLC, Fig & Olive USA Inc., Fig & Olive Holding LLC, Fig & Olive Fifth Avenue LLC, Fig & Olive Inc., Fig & Olive Thirteen Street LLC, Fig & Olive Scarsdale LLC, F&O Chicago LLC and Laurent Halasz, in the matter *Corte v. Fig & Olive Founders, LLC, et al.*, No. 14 Civ. 7186.

## RECITALS

**WHEREAS**, Francisco Corte filed a Class and Collective Action Complaint on September 5, 2014 ("Complaint"); and

**WHEREAS**, the Complaint asserts collective and class action claims against Defendants (as hereinafter defined). Plaintiff (as hereinafter defined) further alleged that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations by, *inter alia*: (1) paying a subminimum wage by taking an unlawful tip credit; (2) requiring workers to work off the clock; (3) failing to pay call-in pay, and (4) failing to meet the NYLL's requirements on wage statements and notices; and

**WHEREAS**, the purpose of this Agreement (as hereinafter defined) is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiff and Defendants, including all claims asserted in the Litigation (as hereinafter defined); and

**WHEREAS**, Defendants deny all of the allegations made by the Named Plaintiff in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, on or around March 4, 2015, the Named Plaintiff and Defendants agreed to engage in dialogue regarding the possibility of a voluntary resolution of the claims asserted in the Litigation and agreed to toll the limitations period on the FLSA and NYLL wage and hour claims at issue to facilitate an exchange of information and payroll data; and

**WHEREAS**, on March 23, 2015, the Parties participated in a mediation session of this matter in New York, New York, which was conducted by experienced class action mediator, Carol Wittenberg, and reached an accord resulting in this Agreement; and

**WHEREAS**, without admitting or conceding any liability or damages whatsoever, Defendants agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, Class Counsel (as hereinafter defined) analyzed and evaluated the merits of the claims made against Defendants in the Litigation, obtained and reviewed documents relating

to Defendants' compensation policies, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiff.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 2.   DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2.1   **Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release.

2.2   **Acceptance Period.** "Acceptance Period" means the 120-day period that each Class Member has to sign and cash a Settlement Check, beginning with the date the Settlement Claims Administrator mails the Settlement Checks.

2.3   **Class Counsel.** "Class Counsel" or "Plaintiff's Counsel" means Lee Litigation Group, PLLC.

2.4   **Class Members.** "Class Members" are the FLSA Collective Action Members, and all Rule 23 Class Members.

2.5   **Court.** "Court" means the United States District Court for the Southern District of New York.

2.6   **Days.** "Days" calendar days.

2.7   **Defendants.** "Defendants" means Fig & Olive Founders, LLC, Fig & Olive USA Inc., Fig & Olive Holding LLC, Fig & Olive Fifth Avenue LLC, Fig & Olive Inc., Fig & Olive Thirteen Street LLC, Fig & Olive Scarsdale LLC, F&O Chicago LLC, Laurent Halasz, Pascal Lorange, Sebastian Gault and Jean-Pierre Halasz. "**Corporate Defendants**" shall mean Fig & Olive Founders, LLC, Fig & Olive USA Inc., Fig & Olive Holding LLC, Fig & Olive Fifth Avenue LLC, Fig & Olive Inc., Fig & Olive Thirteen Street LLC, Fig & Olive Scarsdale LLC, and F&O Chicago LLC.

2.8   **Defendants' Counsel.** "Defendants' Counsel" means Fox Rothschild LLP.  For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Carolyn Richmond and Glenn S. Grindlinger.

2.9   **Effective Date.** "Effective Date" of the Settlement Agreement shall be the last of the following dates:

(A)     If there is no appeal of the Court's Order Granting Final Approval of the Settlement, the date after the time to file an appeal has expired; or

(B)     If there is an appeal of the Court's Order Granting Final Approval of the Settlement, the day after all appeals are resolved in favor of final approval.

**2.10  Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make in the normal course of business arising out of, or based upon the payment of employment compensation, including FICA, FUTA, and SUTA obligations.

**2.11  Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**2.12  Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and Dismissal of the Litigation.

**2.13  FLSA Collective Members.** "FLSA Collective Members" shall be defined as all tipped workers at Defendants' locations in New York State, such as servers, bussers, runners, barbacks, bartenders and delivery persons where such individuals work or have worked between January 1, 2012 and March 31, 2015 who endorse their Settlement Checks or have filed a consent to join form to join the lawsuit.

**2.14  Gross Settlement Amount.** "Gross Settlement Amount" means the Eight Hundred Seventy-five Thousand dollars ($875,000.00), which Defendants have agreed to pay to settle the Litigation, as set forth in this Agreement.

**2.15  Litigation.** "Litigation" means the action filed in the United States District Court for the Southern District of New York and captioned *Corte v. Fig & Olive Founders, LLC, et al.*, No. 14 Civ. 7186.

**2.16  Named Plaintiff.** "Named Plaintiff" means Francisco Corte.

**2.17  Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Awards to the Named Plaintiff.

**2.18  Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing and the Court-approved Notice of Proposed Settlement of FLSA Collective Action Lawsuit and Fairness Hearing. **Notice will be provided in English and Spanish.**

**2.19  Objector.** "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**2.20**   **Opt-in Plaintiffs.** "Opt-in Plaintiffs" mean those individuals who opt into the Litigation by cashing and endorsing their Settlement Checks before the end of the one hundred twenty (120) day Acceptance Period.

**2.21**   **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Rule 23 Class Member has decided to opt-out and not be included in this Agreement.

**2.22**   **Parties.** "Parties" shall mean, collectively, Named Plaintiff, the Rule 23 Class Members, FLSA Collective Members, and Defendants.

**2.23**   **Plaintiffs.** "Plaintiffs" shall mean Named Plaintiff, the Rule 23 Class Members, and FLSA Collective Members.

**2.24**   **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**2.25**   **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Gross Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Gross Settlement Amount.

**2.26**   **Releasees.** "Releasees" means all Defendants and their respective affiliates, related entities, members, and all of the individuals or entities that hold an interest in Fig & Olive Founders, LLC, Fig & Olive USA Inc., Fig & Olive Holding LLC, Fig & Olive Fifth Avenue LLC, Fig & Olive Inc., Fig & Olive Thirteen Street LLC, Fig & Olive Scarsdale LLC or F&O Chicago LLC, including but not limited to Laurent Halasz, Pascal Lorange, Sebastian Gault and Jean-Pierre Halasz, and all of their current and former officers, directors, members, managers, partners, owners, shareholders, investors, agents, attorneys, employees, fiduciaries, predecessors, successors, assigns, and representatives, in their individual or representative capacities.

**2.27**   **Rule 23 Class Members.** "Rule 23 Class Members" shall be defined as all tipped workers at Defendants' locations in New York State, such as servers, bussers, runners, barbacks, bartenders and delivery persons, where such individuals work or have worked between September 5, 2008 and March 31, 2015 and who do not opt-out of the New York Labor Law claims brought pursuant to the Litigation as explained below. The list of 900 currently identified Rule 23 Class Members is attached as Exhibit A and may be increased as described under Section 3.4(A).

**2.28**   **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be CPT Group, which was jointly selected by Class Counsel and Defendants. The Settlement Claims Administrator will be responsible for locating Class Members; mailing the Notices to Class Members; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks worked and settlement share amounts; calculating Class Members' settlement shares; reporting on the state of the Settlement to the Parties;

distributing settlement payments and withholding Class Members' share of taxes; remitting such withheld funds to the appropriate taxing authorities; coordinating collection and compilation of the Settlement Checks for filing with the Court; preparing a declaration regarding its due diligence in the claims administration process; mailing all notices required by the Class Action Fairness Act, depositing the Gross Settlement Amount into an interest bearing account, translating the Notice from English to Spanish, and performing such other duties as the Parties may jointly direct or as are specified herein. The Settlement Claims Administrator's fees shall be borne by the QSF.

**2.29**   **Settlement Checks.** "Settlement Checks" means checks issued to Class Members by the Settlement Claims Administrator for their share of the Net Settlement Fund calculated in accordance with this Agreement.

**3.**   **APPROVAL AND CLASS NOTICE**

**3.1**   **Binding Agreement.** This Agreement, once approved by the Court, is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**3.2**   **Retention of the Settlement Claims Administrator.** Class Counsel shall be responsible for retaining the Settlement Claims Administrator. The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Checks in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Class Members, providing the original Settlement Checks signed by the Class Members to Defendants' Counsel, and providing copies of the Settlement Checks to Class Counsel for filing with the Court. The Administrator will also receive opt outs and objections, and will timely forward the same to the parties upon receipt by the Administrator.

(A)   The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement. The Settlement Claims Administrator will provide biweekly reports to the Parties regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks.

(B)   Defendants agree to cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist the Settlement Claims Administrator in locating Class Members.

(C)   CAFA Notice. Within 10 days after this proposed Agreement is filed or otherwise presented to the Court, the Settlement Claims Administrator, with the reasonable assistance of Defendants, will serve upon the appropriate officials in a state in which a Class Member resides (based upon Class Members' last known addresses) and the Attorney General of the United States a notice of the proposed settlement in compliance with the requirements of Class Action Fairness Act.

3.3    **Preliminary Approval Motion.**  On or before May 29, 2015, Plaintiff will submit to the Court a Motion for Conditional Certification of the Settlement Class and for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion").   In connection with the Preliminary Approval Motion, Plaintiff will submit to the Court, among other things: (a) a proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing which is appended hereto as Exhibit A, and (b) a proposed Order Granting Preliminary Approval.  The Preliminary Approval Motion will seek the setting of dates for opt-outs, objections, and a Fairness Hearing. Plaintiff will provide Defendants with a draft Preliminary Approval Motion no later than May 15, 2015. Defendants will not oppose the Preliminary Approval Motion; however, if Defendants have any comments that Plaintiff refuses to adopt in his Motion for Preliminary Approval, then Plaintiff shall note those comments in their Motion for Preliminary Approval.

(A)    The proposed Preliminary Approval Order will include the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3).  The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of the Rule 23 Class or file objections to the settlement, which date shall be thirty (30) days from the mailing of the Notice to the Class Member.

(B)    In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; (5) award Settlement Claims Administrator's fees and costs; and (6) award Service Awards to Named Plaintiffs.

(C)    If the Court denies the Motion for Preliminary Approval, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement addressing the issues raised by the Court.   Should reconsideration or the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

(D)    The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

3.4    **Notice to Class Members**

(A)    Within fourteen (14) days of the Court's issuance of a Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information to the extent available: name, Social Security Number, last known addresses, and dates of employment within the applicable statute of limitations, as that information exists on file with

ACTIVE 29616428v1

Defendants ("Class List").  In the event that any Class Member who is not on Defendants' Class List presents bona fide proof of employment at any of the relevant Fig & Olive locations, for the time period between September 5, 2008 and March 31, 2015, such employee will be considered to be a Class Member and will be paid out of the Net Settlement Fund, so long as the sum of employees identified in Defendants' original list Class List and newly identified employees does not exceed 900.  Because the Gross Settlement Amount corresponds to Defendants' good faith estimate regarding the number of Class Members, and the Settlement Share to each Class Member could change significantly if the actual number of Rule 23 Class Members differs significantly from the estimate, the parties agreed that the Gross Settlement Amount could cover a maximum of 900 Class Members.  Class Members who do not appear on Defendants' Class List have until the end of the Opt-out Period to identify themselves.  Should the class exceed 900 Class Members, then Defendants shall pay an additional settlement amount for each Class Member, the amount of which will be determined according to the same formula as the 900 Class Members.

(B)     Within thirty (30) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will mail to all Rule 23 Class Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing.

(C)     Within thirty (30) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will mail to all FLSA Collective Action Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit and Fairness Hearing.

(D)     The Settlement Claims Administrator will take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt re-mailings as described in this Agreement.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**3.5     Rule 23 Class Member Opt-outs.**

(A)     Rule 23 Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of the Fig & Olive wage and hour settlement" ("Opt-out Statement").  To be effective, an Opt-out Statement must be postmarked within sixty (60) days from the mailing of the Notice to the Class Member.

ACTIVE 29616428v1

(B)     Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable will be allowed to opt-out or object up to sixty (60) days from the date of the second mailing. The Settlement Claims Administrator shall attempt at least two (2) mailings of the Notice and Claim Form to any Class Member.

(C)     The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Class Members.

(D)     The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel no later than five (5) days after receipt thereof. The Settlement Claims Administrator will also, within five (5) days of the end of the Opt-out Period, file with the Clerk of Court, stamped copies of any Opt-out Statements. The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a release of both their FLSA and state law claims, and a consent-to-join the Litigation, as set forth in this Agreement.

**3.6   Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in a written statement ("Written Objection"). To be considered, the Written Objection must be mailed to the Settlement Claims Administrator, via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain sixty (60) days from the mailing of the Notice to the Class Member. The Written Objection must include (1) the words, "I object to the Fig & Olive wage and hour settlement;" (2) all reasons for the objection (any reasons not included in the statement will not be considered); and the name, job title, address, and telephone numbers for the Class Member making the objection. An objection will not be valid or considered by the Court if it does not specifically comply with all of the requirements listed herein. The Settlement Claims Administrator will stamp the date received on the original and send copies of each Written Objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than three (3) days after receipt thereof. The Settlement Claims Administrator will also file the date-

stamped originals of any and all Written Objections with the Court within three (3) days after the end of the Opt-out Period.

(B)    An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in this section. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her Written Objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement or speak at the Fairness Hearing.

(C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**3.7    Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the classes for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 3.5, and (d) dismiss the Litigation with prejudice.

**3.8    Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement or such Judgment does not become Final as defined herein, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A)    The Litigation will proceed as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims being asserted by Plaintiffs in this action. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

(B)    The Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

ACTIVE 29616428v1

3.9    **Releases and Consents to Join.**

(A)    A Class Member who does not timely return an Opt-out Statement will be issued a Settlement Check by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.

(B)    All Settlement Checks shall contain on the back of the check, the following limited endorsement, in English and Spanish:

**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

I understand that I have up to one hundred twenty (120) days from the date I was mailed this Settlement Check to sign and cash this Settlement Check.

By endorsing this check, I consent to join in the case entitled *Corte v. Fig & Olive Founders LLC, et al.*, No. 14 Civ. 7186, now pending in the United States District Court for the Southern District of New York, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case.

I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim that I have or might have against Defendants, its parents, affiliates, subsidiaries, officers, directors, shareholders, agents, or employees, for violations of the federal or state wage and hour laws, relating to my employment with Fig & Olive as a tipped employee up to and including [the date of the Preliminary Approval Order].

_____    Dated:_____
Signature

(C)    The Settlement Checks will be mailed to the Class Members and the attorneys' fees and costs checks mailed to Class Counsel by the Settlement Claims Administrator fifteen (15) days after the QSF is fully-funded provided the Court has issued its Final Approval Order and the time to appeal the Final Approval Order and Judgment for Dismissal has expired.

(D)    The Court will retain jurisdiction over the case following the entry of the Judgment for Dismissal until thirty (30) days after the end of the Acceptance Period.   The Settlement Claims Administrator will notify the Court of the expiration of the Acceptance Period.

4.    **SETTLEMENT TERMS**

4.1    **Settlement Amount.**

(A)    Defendants agree to pay the Gross Settlement Amount (Eight Hundred Seventy-five Thousand Dollars ($875,000.00)), which shall fully resolve and satisfy any and all claims for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to

Named Plaintiff, any and all fees and costs associated with investing and liquidating the QSF, and the Settlement Claims Administrator's fees and costs, including the cost of translating the Notice from English to Spanish. Other than the employer payroll taxes ordinarily and customarily borne by an employer, and Defendants' one-half share of the mediator's fees, and any claims from tipped employees employed at a Fig & Olive New York location, who do not appear on Defendants' Class list if the Class number exceeds the 900 person limit of Class Members, Defendants will not be required to pay more than the gross total of Eight Hundred Seventy-five Thousand Dollars ($875,000.00) under the terms of this Agreement.[1]

(B)     By no later than thirty (30) days after the date of the Preliminary Approval Order, Defendants shall deposit One Hundred Thousand Dollars ($100,000.00) into the QSF, by depositing into either a third-party escrow account or submitting such funds to the Settlement Claims Administrator.  By no later than thirty (30) days after the Court finally approves the settlement, Defendants will remit the remainder of the Settlement Fund ($775,000.00) to the QSF, by depositing into either a third-party escrow account or submitting such funds to the Settlement Claims Administrator. Any interest accrued from the QSF shall immediately be added to and become part of the Gross Settlement Amount.  In the event, the Court or any Appellate Court denies final approval to the Settlement Agreement and all appeals have been exhausted, any funds held in an escrow account or by the Settlement Claims Administrator shall be returned to Defendants with interest.

(C)     Class Members will have one hundred twenty (120) days from the date of mailing to endorse and cash their Settlement Checks (the "Acceptance Period").  Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.

(D)     After one hundred eighty (180) days after the Final Approval Order, any uncashed Settlement Checks to Rule 23 Class Members or Service Award checks outstanding shall be applied to a *cy pres* chartiable donation to a school or non-profit organization devoted to the care or education of children on the autism spectrum, as determined by Plaintiff's counsel after consultation with Defendants' Counsel.   Under no circumstances shall any such monies be applied to a charitable organization in which Plaintiff's Counsel or anyone affiliated with Plaintiff's Counsel or the spouse of any such individual serves as an officer, director, or employee of such organization or has received an award or honor from such organization.   For purposes of this provision, the mailing date shall be deemed to be the date posted on the settlement checks.

## 4.2     Settlement Amounts Payable as Attorneys' Fees and Costs.

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (1/3)

---

[1]     For duties of the Claims Administrator, see ¶ 2.28.

of the Gross Settlement Amount, and, in addition, for reimbursement of their actual litigation costs, translation costs, and expenses to be paid from the QSF. Defendants will not oppose this application. After depositing the Gross Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B) The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**4.3 Service Award to Plaintiff.**

(A) In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiff Francisco Corte will apply to the Court to receive up to Ten Thousand Dollars ($10,000.00) as a Service Award from the QSF. Defendants will not oppose such application.

(B) The application for Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

**4.4 Net Settlement Fund and Allocation to Class Members.**

(A) The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B) A Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1) Each Class Member who worked for Defendants in the State of New York shall be assigned one point for each week worked in New York for Defendants between September 5, 2008 and March 31, 2015.

(2) To calculate each Class Member's proportionate share:

(a) Add all points for Class Members together to obtain the "Total Denominator;"

      (b)     Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the Net Settlement Fund."

   (3)     Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Settlement Award."

   (4)     Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Settlement Award."

**4.5    Tax Characterization.**

   (A)    Defendants shall be responsible for any and all applicable employer tax contributions associated with wage payments, including, but not limited to, Defendants' share of FICA. Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Fund, and not be paid out of the Settlement Fund. The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Class Members shall not be Defendants' responsibility.

   (B)    For tax purposes, 50% of payments to Class Members pursuant to Section 4.4 shall be treated as back wages and 50% of such payments shall be treated as non-wage income, including interest and liquidated damages.

   (C)    Payments treated as back wages pursuant to Section 4.5(B) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as interest or liquidated damages pursuant to Section 4.5(B) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 4.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Any Service Award payment pursuant to Section 4.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. The Settlement Claims Administrator shall be responsible for making all tax related calculations required with the payout of the Settlement Fund.

ACTIVE 29616428v1

## 5.   RELEASE

### 5.1   Release of Claims.

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement:

(A)   Upon the Effective Date, and except as to such rights or claims that may be created by this Agreement, each Rule 23 Class Member who does not timely opt-out pursuant to this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future representatives, heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases and discharges any and all Releasees from (i) any and all wage and hour claims based on or under the New York Labor Law, the New York Wage Theft Prevention Act, the corresponding New York Code of Rules and Regulations, and any New York State Wage Orders (including but not limited to, the Wage Order for the Hospitality Industry), (ii) for all wage and hour claims arising out of or relating to work performed at or for the Releasees, and (iii) any and all wage and hour claims that were or could have been asserted in the Litigation, whether known or unknown, through the date of preliminary approval of this Agreement, including but not limited to, all claims for damages, interest, liquidated damages, and attorneys' fees and costs related to such claims.

Upon the Effective Date, and except as to such rights or claims that may be created by this Agreement, each FLSA Collective Member forever and fully releases and discharges all Releasees from all wage and hour claims based on the Fair Labor Standards Act, as amended, claims arising out of or relating to work performed at or for Releasees for overtime wages, interest, liquidated damages, and attorneys' fees and costs related to such claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date of preliminary approval of this Agreement including but not limited to all claims for damages, interest, liquidated damages, and attorneys' fees and costs related to such wage and hour claims.

(B)   **Release of Fees and Costs for Settled Matters.** Class Counsel on behalf of the Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members.

(C)   In addition to the waiver and release contained in Sections 5.1(A)-(B) above, and in consideration for the payment(s) received under Section 4.1(A) as well as Section 4.3(A), Named Plaintiff, his respective heirs, executors, administrators, successors and assigns, voluntarily release and forever discharge Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges,

complaints, appeals and demands whatsoever, in law or equity, which he may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act; the Family and Medical Leave Act; the New York City Human Rights Law; the New York State Human Rights Law; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of Plaintiff's execution of this Agreement.

**5.2    Non-Admission of Liability.**  Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) provide substantial benefits to Defendants' investors, (ii) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest.  Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

**5.3    Representations and Warranties of Named Plaintiff.**  By signing this Agreement, the Named Plaintiff acknowledges and agrees that:

(A)    He has been afforded a reasonable and sufficient period of time for review, for deliberation thereon and for negotiation of the terms thereof, and he has been specifically urged by Defendants to consult with legal counsel or a representative of his choice, has had the opportunity to do so and has, in fact, done so by consulting with the firm of Lee Litigation Group, PLLC, his attorneys of record;

(B)    He has read and understands the terms of this Agreement, all of which have been fully explained to him;

(C)    He has signed this Agreement freely and voluntarily and without duress or coercion and with full knowledge of its significance and consequences and of the rights relinquished, surrendered, released and discharged hereunder;

ACTIVE 29616428v1

(D)     The only consideration for signing this Agreement are the terms stated herein and no other promise, agreement or representation of any kind has been made to the Named Plaintiff by any person or entity whatsoever to cause him to sign this Agreement; and

(E)     He has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation.

## 6.     INTERPRETATION AND ENFORCEMENT

6.1     **Cooperation Between the Parties; Further Acts.**    The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

6.2     **No Assignment.**   Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

6.3     **Entire Agreement.**   This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

6.4     **Binding Effect.**   This Agreement shall be binding upon the Parties once approved by the Court and, with respect to the Named Plaintiff, the Opt-in Plaintiffs, and all Class Members.

6.5     **Arms' Length Transaction; Materiality of Terms.**   The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.6     **Captions.**   The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.7     **Construction.**   The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

ACTIVE 29616428v1

**6.8    Severability.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**6.9    Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**6.10    Continuing Jurisdiction.**  The United States District Court for the Southern District of New York **shall** retain exclusive jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**6.11    Waivers, Modifications or Amendments to Be in Writing.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**6.12    Publicity.**  Class Members and Class Counsel and Defendants' Counsel agree that they will respond to any press inquiries with the response that "the parties have resolved their differences to their mutual satisfaction" or words to that effect.

**6.13    When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**6.14    Signature of Named Plaintiff.**  This Agreement is valid and binding if signed by Defendants' authorized representative and the Named Plaintiff,

**6.15    Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS:**

DATED: 5|22, 2015         **FIG & OLIVE FOUNDERS LLC:**

By: _____

Its: _____ managing partner

DATED: 5|22, 2015         **FIG & OLIVE USA INC.:**

By: _____

Its: _____ Chairman

DATED: 5|22, 2015         **FIG & OLIVE HOLDING LLC:**

By: _____

Its: _____ Chairman

DATED: 5|22, 2015         **FIG & OLIVE FIFTH AVENUE LLC:**

By: _____

Its: _____ Chairman

DATED: 5|22, 2015         **FIG & OLIVE INC.:**

By: _____

Its: _____ Chairman

- 18-

DATED: 5/22, 2015      **FIG & OLIVE THIRTEEN STREET LLC:**

By: _____

Its: Chairman _____

DATED: 5/22, 2015      **FIG & OLIVE SCARSDALE LLC:**

By: _____

Its: Chairman _____

DATED: 5/22, 2015      **F&O CHICAGO LLC**

By: _____

Its: Chairman _____

DATED: 5/22, 2015      **LAURENT HALASZ**

_____

DATED: _____, 2015      **FRANCISCO CORTE**

_____

ACTIVE 29616428v1

DATED: _____, 2015          **FIG & OLIVE THIRTEEN STREET LLC:**

                              By: _____

                              Its: _____

DATED: _____, 2015          **FIG & OLIVE SCARSDALE LLC:**

                              By: _____

                              Its: _____

DATED: _____, 2015          **F&O CHICAGO LLC**

                              By: _____

                              Its: _____

DATED: _____, 2015          **LAURENT HALASZ**

                              _____

DATED: 5/14, 2015            **FRANCISCO CORTE**

                              by CK Lee, as attorney

EXHIBIT A

[REDACTED ON ECF]